ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2010 JUL 29 PM 2:56
CLERK [signature]
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| LORENZO PENA-MORFE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-088 |
| | ) | |
| WALT WELLS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner, an inmate currently incarcerated at McRae Correctional Facility[1] ("McRae") in McRae, Georgia, has commenced the above-captioned case pursuant to 28 U.S.C. § 2241 contesting, among other things, the execution of his sentence of confinement. Respondent has filed his response to the petition. (Doc. no. 4.) For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

I. BACKGROUND

A. Procedural Background

Petitioner is serving a sentence of 195 months of incarceration for his convictions of Hostage Taking and Use of a Firearm during and in relation to a Crime of Violence. (Doc.

---

[1] McRae is a private correctional facility operated by the Corrections Corporation of America ("CCA") under contract with the Bureau of Prisons.

no. 4, p.1 and Ex. 1.) He is scheduled for release on December 6, 2011, via good conduct time release. (Id.) Petitioner filed this § 2241 petition contending that he has impermissibly been deprived of twenty-seven (27) days of good conduct time ("GCT"), after being found guilty by a disciplinary hearing officer ("DHO") of participating in a group demonstration that consisted of boycotting three specific meals served at McRae, in violation of prison regulations. (See generally doc. no. 1.) Petitioner claims in his petition that the disciplinary procedures violated his due process rights because the Unit Disciplinary Committee Hearing ("UDC Hearing") was unlawfully delayed, and because there was no evidence that he committed the act as charged in the incident report. (See id. at 4-9.) Petitioner also attempts to assert claims that he was unlawfully placed in the Special Housing Unit pending the investigation, that the DHO was not qualified to perform his duties, and that several inmates who were involved in the alleged group demonstrations were not similarly punished. (See id. at 1-6.) As relief, Petitioner requests restoration of the 27 days of GCT and expungement of the disciplinary report from his record. (Id. at 9.)

The Court directed service to be effected on Respondent and instructed Respondent to show cause why Petitioner's writ should not be granted by filing a response within twenty (20) days of the date of service. (Doc. no. 2.) Respondent contends that Petitioner was afforded due process with respect to his disciplinary hearing; that he failed to exhaust all remaining claims; and that even if he had exhausted his remaining claims, that they are not cognizable in this habeas petition. (See generally doc. no. 4.)

### B. Disciplinary Charges and Proceedings

Respondent provides that on January 28 and 29, 2009, staff at McRae became aware of what they believed to be an inmate food boycott, which involved a group of inmates refusing to eat the provided Kosher meals. (Doc. no. 4, Ex. 4 (Carey Decl.), ¶ 6.) Respondent further provides that the suspected boycott was identified as specifically targeting the evening meal served on January 28, 2009, and the morning and noon meals served on January 29, 2009. (Id.) According to Respondent, an initial investigation into the suspected food boycott identified Petitioner as a possible participant since he did not receive the meals that were identified as the target of the suspected boycott. (Id. ¶ 7.)

Accordingly, on January 29, 2009, Petitioner was placed in the Special Housing Unit pending an investigation of his participation in the suspected boycott. (Id. ¶ 8, Attach. 1.) Respondent maintains that an incident report was prepared on January 29, 2009, but that the investigation into Petitioner's incident report was suspended pending the results of an investigation by the institution's Special Investigation Services ("SIS"). (Id. ¶¶ 9, 10, Attach. 2.) Respondent further states that the SIS investigation of 119 alleged inmate participants was finalized by Respondent on February 23, 2009. (Id. ¶ 10.) On February 25, 2009, the suspension of Petitioner's incident report was lifted, and the investigation of his incident report commenced. (Id. ¶ 10, Attach. 2, § 22.) On that same date an investigator assigned to Petitioner's case advised Petitioner of his right to remain silent at all stages of the disciplinary process. (Id., Ex. 4, ¶ 12, Attach. 2, § 23.) The investigator then proceeded to question Petitioner about his involvement in the suspected boycott. (Id., Ex. 4, ¶ 13, Attach. 2, §§ 26, 27.) Respondent provides that Petitioner told the investigator that he

3

received the breakfast meal on January 29, 2009, but he did not receive the lunch meal because the menu had changed and he is not allowed to eat spicy food. However, Respondent provides that the investigator concluded, based on the report from the reporting staff member and the investigation completed by the SIS department, that there was sufficient evidence to continue processing the incident report and forwarded the report to the Unit Disciplinary Committee ("UDC") for a hearing. (Id., Ex. 4, ¶ 13, Attach. 2, §§ 26, 27.)

On February 25, 2009 after the suspension of Petitioner's incident report was lifted and the investigation of the incident report was completed, Petitioner was charged with Engaging in a Group Demonstration in violation of Code 212 of the disciplinary regulations. (Id., Ex. 4, ¶ 13, Attach. 2, §§ 26, 27.) The UDC held a hearing on March 9, 2009, at which Petitioner appeared and provided a statement maintaining that he did not participate in a Group Demonstration.[2] (Id.) Due to the nature of the allegation against Petitioner, the UDC made no decision and referred the matter for a hearing by a DHO. (Id.)

The UDC provided Petitioner with notice of his rights before the DHO, including his right to call witnesses, to present evidence, and to request assistance from a staff representative. (Id., Ex. 4, Attach. 4.) Petitioner declined to exercise his rights. At the DHO hearing on April 14, 2009, Petitioner provided his statement, and presented evidence, but did not request assistance from a staff representative or have a witnesses provide statements on his behalf. (Id. Ex. 4 ¶ 18 and Attach. 6 § III.)

On April 15, 2009, the DHO issued his written decision. In making his decision,

---

[2]On March 9, 2009, Petitioner was advised in writing of the UDC Hearing delays and the reasons for the delay. (Doc. no. 4, Ex. 4, ¶ 14, Attach. 3.)

4

Respondent explains that the DHO considered the incident report and investigation, the meal monitoring records from McRae, the January 29th interview questionnaire, the McRae medical sick call appointments from January 27-30, 2009, and a memorandum from the Assistant Chief of Security. (Id. Ex. 4, ¶ 18 and Attach. 6, § III(D).) According to the DHO's Report, the meal monitoring records indicated that between the January 22, 2009 breakfast meal, and the January 29, 2009 noon meal, the only meals Petitioner did not receive were the meals identified as the target of the Group Demonstration. (Id. § V.) Furthermore, the DHO noted that when he asked Petitioner if he was aware of the Group Demonstration, Petitioner responded that he was not; had he been, he would have taken his food so he would not get in trouble. (Id.) The DHO also asked Petitioner whether he ate any of the meals that were the target of the Group Demonstration. (Id.) Petitioner responded that he had eaten the January 29, 2009 breakfast meal. (Id.) The DHO then asked Petitioner, if he had eaten the January 29, 2009 breakfast meal, why did the meal report indicate that he had not eaten that meal? (Id.) Petitioner responded, "No, I misunderstood, I ate breakfast on the 28th." (Id.)

In response to Petitioner's statement that he did not eat the evening meal served on January 28, 2009, and the morning and noon meals served on January 29, 2009 because the new menu was too spicy and made him sick, the DHO asked Petitioner, "If the new menu upset your stomach, why did you continue to eat it from January 26, 2009, through the [noon[3]] meal of January 28, 2009?" (Id.) Petitioner responded, "I only took the food for the vegetables on those meals." (Id.) Next, the DHO asked Petitioner, about his statement to

---

[3]Petitioner admitted that he did not eat the evening meal on January 28, 2009. (Doc. no. 4, Ex. 4, Attach. 6, § V.)

the Unit Manager on January 29th, that he was participating in the Group Demonstration because "[t]hey only give half portions." (Id.) Petitioner replied that he never made that statement. (Id.) Petitioner claimed that he only told the Unit Manager that the food made his "stomach sick." (Id.) The DHO then asked, "If the food made you sick, why didn't you go to sick call?" (Id.) Petitioner responded, "I went to sick call every day." (Id.) The DHO then asked Petitioner why was his name not on the sick call appointment list from January 27 through 30, 2009 if he went to sick call every day? (Id.) Petition responded, "If something makes me sick I do not eat, I go to pill call." (Id.) In addition, the DHO noted that the memorandum written by the Assistant Security Chief indicated that he monitored the serving of the kosher meal at noon on January 29th and that he observed only one inmate participate in the meal (who was not Petitioner). (Id.)

Based on this evidence, the DHO found Petitioner guilty of participating in the Group Demonstration and sanctioned him with a loss of 27 days of GCT. (Id. § VI.) The DHO explained that he had imposed this sanction because such behavior "threatens the safety of all inmates as well as the overall security of the facility. In the past, group demonstrations have led to ser[i]ous damage to facilities as well as ser[i]ous injury to staff and inmates alike, to both people involved and people not involved in the demonstration." (Id. § VII.) With those facts in mind, the Court turns to the merits of the claims raised in the § 2241 petition.

## II. DISCUSSION

### A. Due Process Claim

Petitioner claims that his due process rights were violated during the course of the events described. Specifically, Petitioner argues that the disciplinary procedures violated his

due process rights because the UDC Hearing was unlawfully delayed; Petitioner also claims his due process rights were violated because there was no evidence that he committed the act as charged in the incident report. (See generally doc. no. 1.) On the other hand, Respondent contends that Petitioner received all the rights to which he was entitled, and therefore, he fails to provide a basis for relief. (See doc. no. 4) Respondent has the better argument.

In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. However, a prisoner facing a disciplinary hearing is still entitled to compliance with the following minimum due process protections: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Id. at 563-67; see also Asad v. Crosby, 158 F. App'x 166, 172-73 (11th Cir. 2005); Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

In addition to these procedural due process requirements, the Supreme Court has explained that the degree of proof required at a prison disciplinary hearing to satisfy due process is significantly lower than that required in a criminal prosecution. In Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445 (1985), the Supreme Court concluded that a finding that "some evidence" supports the decision of a prison disciplinary board is enough to satisfy the minimum due process requirements for prisoners facing loss of GCT:

> This standard is met if "there was some evidence from which the conclusion

7

of the administrative tribunal could be deduced . . . ." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. [103,] 106 . . . [(1927)]. Ascertaining whether this standing is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Id. at 455-56. The Eleventh Circuit has further explained the limited judicial review that federal courts may undertake in reference to prison disciplinary actions:

> The federal courts cannot assume the task of retrying all prison disciplinary disputes. No de novo review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by "some facts"--"whether any evidence at all" supports the action taken by prison officials.

Young v. Jones, 37 F.3d 1457, 1460 (11th Cir. 1994) (quoting Smith v. Rabalais, 659 F.2d 539, 545 (5th Cir. 1981)).

Here, the Court concludes that the procedural due process requirements were met with respect to Petitioner's disciplinary hearing and that "some evidence" supports the DHO's decision. Indeed, as noted above, on January 30, 2009, Petitioner was provided with a copy of the incident report notifying him of the charges against him. (Doc. no. 4, Ex. 4, ¶ 9 and Attach. 2.) Once the stay of the processing report was lifted, the UDC held a hearing on March 9, 2009 and referred the matter to the DHO for a hearing that was held on April 14, 2009. (Id., Ex. 4, Attachs. 4, 5, 6.) Petitioner was also advised of the rights afforded to him at his disciplinary hearing, which included, among other things, his rights to call witnesses and present evidence. (Id., Attach. 4.) Importantly, however, as noted in the DHO Report, Petitioner chose not to exercise his rights to be represented by a staff representative, or have a witnesses provide a statement on his behalf. (Id., §§ II, III.)

8

The DHO issued a detailed report explaining the evidence upon which he relied in reaching his decision, as well as his reasons for sanctioning Petitioner with a loss of 27 days of GCT. (Id., Attach. 6, § IV.) The DHO Report indicated that a copy was delivered to Petitioner on April 20, 2009, and Petitioner does not contest that he received this report. (Id. § IX.) In fact, Petitioner attached a copy of the DHO Report to his § 2241 petition. (See doc. no. 1, Ex. A.) Finally, the Court finds that the decision of the DHO is supported by "some evidence." Indeed, Petitioner's own statements to the DHO, as well as the meal monitoring data and memorandum from Assistant Chief of Security, demonstrate that Petitioner did not pick up the meals that were identified as the target of the Group Demonstration.

To the extent Petitioner argues that the disciplinary procedures violated his due process rights because the UDC Hearing was unlawfully delayed, his argument fails. Program Statement 5270.07 provides that an inmate charged with a disciplinary infraction is entitled to an initial hearing before the UDC, ordinarily held within three work days from the time the staff became aware of the inmate's involvement in the incident.[4] (Doc. no. 4, Ex. 5, Ch. 6, § 1.) The UDC may extend time limits imposed in this section for good cause shown by the inmate or staff and documented in the record of the hearing. (Id. § 1(k).) The UDC is to ensure that the inmate is advised of the delay, including, where appropriate, the reasons for the delay. (Id.) Additionally, the Warden's approval is required for any extension beyond five work days. (Id.) When an extension is approved, the inmate is to be provided with a written explanation for the extension, and a copy of the reason is to be made

---

[4]This three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holidays. (Doc. no. 4, Ex. 5, Ch. 6, § 1.)

a part of the UDC record. (Id.)

Here, the staff at McRae became aware of the Group Demonstration on January 28 and 29, 2009. Plaintiff's UDC Hearing was not held until March 9, 2009. However, the record in this case reflects that the investigation into Petitioner's incident report was suspended pending the results of an investigation by the institution's SIS. (Id., Ex. 4, ¶ 10 and Attach. 3.) Respondent explains that the SIS investigation was of 119 alleged inmate participants, and that the delay resulted because of the sizable number of inmates involved in the Group Demonstration and the necessary "detailed methodical approach to the investigation. (Id. at 11.) As such, Respondent had good cause for the extension. Furthermore, the record reflects that all other requirements under Program Statement 5270.07 were met. Petitioner was advised in writing of the delay and was advised of the reason for the delay. (Id., Ex. 4, Attach. 3.) Furthermore, the Warden signed Petitioner's notice of the delay, and the notice was included in the UDC record. (Id., Attachs. 2, 3, 6.) The record reflects that on January 29, 2009, Petitioner's incident report was suspended pending the SIS investigation; the suspension was lifted on Thursday, February 25, 2009. The UDC Hearing was held on Monday, March 9, 2009.

Notably, even in cases such as this one, where the UDC Hearing has not been timely held, a violation of a Bureau of Prisons regulation does not rise to a due process violation.[5] Indeed, due process does not impose a requirement that an initial hearing be held within three days of the staff becoming aware of an incident. As noted above, the Supreme Court held

---

[5]Petitioner's argument that he did not receive the notice of delay until March 9, 2009, 38 days after the incident, fails for the same reasons, discussed more fully *infra*.

10

that the Constitution requires compliance with minimal federal due process standards and explained that these minimal requirements are: (1) written notice of the charges against him at least 24 hours before his hearing; (2) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in his defense. Wolff, 418 U.S. at 563-67. As these requirements were met in this case, Petitioner's dissatisfaction with the delay that occurred between the suspected boycott and his disciplinary hearing do not implicate due process concerns. See, e.g., Dixon v. Hastings, 202 F. App'x 750, 751-52 (5th Cir. 2006) (*per curiam*) (noting failure to follow procedural regulations does not create *per se* constitutional violations where constitutional minima has been met).

Petitioner's argument that the DHO was not qualified to perform his duties because the DHO, according to Petitioner, had not received specialized DHO training and is not a Bureau of Prisons employee,[6] similarly fails. In support of his argument, Petitioner points to 28 C.F.R. § 541.16 and Program Statement 5270.07, Ch. 7, "A Discipline Hearing Officer may not conduct hearings without receiving specialized DHO training and without passing a DHO certification test." (Doc. no. 11, p. 2.) Indeed, an inmate is entitled to have a charge

---

[6]Petitioner's argument that because the DHO is not a BOP employee, he is not qualified to perform DHO duties, also misses the mark. The Honorable Dudley H. Bowen, Jr., United States District Judge in Ravelo v. Pugh, CV 306-012 (S.D. Ga. Feb. 13, 2006), recognized that "[i]t is well-established that federal agencies may not delegate their statutory authorities to private parties. However, '[t]he ultimate test of the validity of an agency's delegation of responsibility to a private party is whether the delegating agency retains final decision-making authority.'" Id. (citing Ocean Conservancy v. Evans, 260 F. Supp. 2d 1162, 1183 (M.D. Fla. 2003)). Here, the BOP determined that the disciplinary proceedings and resulting disallowance of GCT were proper. Because the BOP has retained final decision-making authority in the imposition of disciplinary sanctions, it has not unlawfully delegated its authority to CCA. Petitioner may not obtain relief on these grounds.

against him determined by an impartial decisionmaker. Wolff, 418 U.S. at 563-72. A decisionmaker is considered impartial unless he or she has "a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decisionmaking role, in the circumstances underlying the charge. Meyers v. Allredge, 492 F.2d 296, 306 (3d Cir. 1974); Mitchell v. Maynard, 80 F.3d 1433, 1446 (10th Cir. 1996) (due process challenges to decisionmaker's impartiality are limited to whether any bias prevented inmate from receiving a meaningful opportunity to be heard and whether discipline was imposed for an improper purpose). However, as the record does not reflect that the DHO was in any way involved in the facts giving rise to Petitioner's charge, there is no basis to conclude that DHO was not impartial.

Moreover, this claim is not properly exhausted because the first time Petitioner raised any concern regarding the DHO's qualification is in his § 2241 petition (i.e., nowhere does he question the DHO's qualification during his administrative process). As addressed in more detail *infra*, failure to exhaust administrative remedies prior to filing a complaint or petition in federal court bars a court from granting relief under such a complaint or petition. Accordingly, the Court finds that Petitioner's claim that he was deprived of due process and is entitled to restoration of 27 days of GCT is without merit and fails to provide a basis for relief.

### B.     Remaining Claims

As noted above, Petitioner also attempts to raise various claims that he was unlawfully placed in the Special Housing Unit pending the investigation and that several inmates who were involved in the alleged group demonstrations were not similarly punished.

12

The crux of Petitioner's argument concerning these claims is that he should not have been placed in the Special Housing Unit, and that he, as well as other inmates, have a right to be provided with food "sufficient to sustain them in good health." (Doc. no. 1.) As such, Petitioner asserts that the Bureau of Prisons should prepare food in a manner that is consistent with the dictates of the Jewish and Muslim religions; in other words, the Bureau of Prisons should provide Kosher meals. (Id.) Notably, the sole function of habeas corpus, however, "is to provide relief from unlawful imprisonment or custody, and it cannot be used for any other purpose." Cook v. Hanberry, 592 F.2d 248, 249 (5th Cir. 1979), revised by 596 F.2d 658 (5th Cir. 1979).[7] "Habeas corpus is not available to prisoners complaining only of mistreatment during their legal incarceration." Id.

Here, however, the factual allegations raised in the remaining claims listed above challenge the conditions, rather than the fact or duration, of Petitioner's confinement. Such allegations may be appropriate in a civil rights complaint, but do not state cognizable grounds for relief in a § 2241 petition. Accordingly, Petitioner's remaining claims should be dismissed for failure to allege grounds on which § 2241 relief may be granted.

That said, at least as to Petitioner's claims that he was denied equal protection and that the DHO was not qualified, the Court recognizes that other courts have allowed federal prisoners to bring similar claims in § 2241 petitions. See, e.g., United States v. Tamayo, 162 F. App'x 813, 815 (10th Cir. Jan. 11, 2006) (considering alien's "equal protection" challenge to "execution" of his sentence under § 2241 without assessing whether claim was exhausted);

---

[7] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

Smith v. Bezy, 141 F. App'x 479, 481-82 (7th Cir. 2005) (considering inmates right to a hearing before an impartial decisionmaker). Notably, however, even if Petitioner were allowed to proceed with his remaining claims, those claims would still be subject to the exhaustion requirement and, as addressed *infra*, Petitioner has not satisfied that requirement.

The failure of a prisoner to exhaust his administrative remedies prior to filing a complaint or petition in federal court bars a court from granting relief under such a complaint or petition. 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 92 (2006); Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004) (*per curiam*); Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992) (*per curiam*). Moreover, mere perceived futility of exhaustion does not excuse a prisoner from pursuing administrative relief before filing a civil complaint in federal court. E.g., Higginbottom v. Carter, 223 F.3d 1260, 1261 (11th Cir. 2000) (*per curiam*) (stating that "the exhaustion requirement [in a prisoner civil rights case] cannot be waived based upon the prisoner's belief that pursuing administrative procedures would be futile"); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994) (recognizing exhaustion requirement in relation to bringing § 2241 petition and noting any exception to exhaustion would apply only in "extraordinary circumstances"); cf. Jaimes v. United States, 168 F. App'x 356, 359 (11th Cir. 2006) (*per curiam*) (observing that whether habeas petitioner "may even assert a futility exception to the [exhaustion] requirement is questionable"). Here, Petitioner's grievance record (doc. no. 4, Ex. 3), reflects that he did not exhaust his administrative remedies concerning his claims that he was unlawfully placed in the Special Housing Unit pending the investigation, that the DHO was not qualified to perform his duties, and that several inmates who were involved in the alleged group demonstrations were

not similarly punished. Thus, even if Petitioner had brought the instant claims in a civil rights complaint or if his claims were cognizable under § 2241, he would not be entitled to relief because of his failure to exhaust his administrative remedies.[8]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Respondent Wells.

SO REPORTED and RECOMMENDED this 29th day of July, 2010, at Augusta, Georgia.

*/s/ W. Leon Barfield*
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[8] Even if Petitioner had exhausted his administrative remedies before filing under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), he still might not be entitled to relief in federal court. See Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008) (holding that prisoners in a private federal facility are not entitled to Bivens relief when adequate state remedies are available).

15